EDWARD B. BECK AND ANOTHER v.
COUNCIL OF THE CITY OF ST. PAUL AND ANOTHER.[1]

October 11, 1951.

No. 35,629.

---

[1]Reported in 50 N. W. (2d) 81.

*Joseph J. Ermatinger,* for relators.

*William M. Serbine,* Corporation Counsel, and *Marshall F. Hurley,* Assistant Corporation Counsel, for respondents.

MATSON, JUSTICE.

In certiorari proceedings relators seek a review, upon jurisdictional grounds, of the action of the council of the city of St. Paul in adopting a resolution for the vacation of one of its streets.

We are concerned with the attempted vacation of that portion of South Oxford street which lies between Juliet avenue and Palace avenue in the city of St. Paul. Ever since its dedication, commencing with the platting of Ridgewood Park Addition in 1887, South Oxford street has remained in an ungraded and unimproved condition. Relators are owners in fee of two lots (lots 1 and 2, block 19, in Ridgewood Park Addition), which actually abut on that portion of South Oxford street with which we are concerned and which is hereinafter referred to as the street. The legal title to all other lots abutting on said street (lots 3, 4, 5, and 6 of block 19, and lots 9, 10, 11, 12, 13, and 14 of block 18, all in said addition) is in the state of Minnesota for forfeited taxes, subject, however, to their purchase on a contract for deed by Dwight B. Jones and Phyllis Gene Jones as joint tenants. The two relators, as well as the contract purchasers, are all residents of St. Paul.

In January 1951, the contract purchasers, Dwight B. and Phyllis Gene Jones, filed a petition for the vacation of the street in question. Relators filed their written objections. After hearings upon said petition, the city council on June 12, 1951, over the objections of relators, adopted a resolution vacating and discontinuing the

street as a public thoroughfare. Relators have brought the matter before this court for review by certiorari and thereby seek to have the resolution for the vacation of the street adjudged illegal and void on the ground that the council was without jurisdiction or authority to adopt the same, in that petitioners have not at any time constituted a majority of the owners of property on the line of said street as required by § 129 of the charter of the city of St. Paul, which provides:

"* * * No such vacation * * * shall be granted or ordered by the council except upon the petition of the *majority of the owners of the property on the line of such* * * * *streets,* * * * resident within said city, * * *.

"* * * No vacation of any street, * * * shall * * * be allowed except upon such terms and conditions as to the compensation, if any, to be paid by the *persons seeking such vacation,* * * * nor shall said council order any vacation without adequate compensation to said city." (Italics supplied.)

■  Clearly, certiorari lies to review the quas-judicial acts and proceedings of a municipal body to determine—through an inspection of the record—if the body had jurisdiction, kept within it, and to examine the evidence, not for the purpose of weighing it, but to ascertain whether it furnished any legal and substantial basis for the action taken.[2] Here, we have a direct attack upon the jurisdiction or power of the city council.[3] There is no dispute as to the facts. Aside from the interest of the state in the tax-forfeited land, we are concerned only with four persons who are owners of proper-

[2]State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118; Townsend v. Common Council, 71 Minn. 379, 74 N. W. 150; In re Application for Removal of Wm. M. Nash, 147 Minn. 383, 181 N. W. 570; Hughes v. Dept. of Public Safety, 200 Minn. 16, 273 N. W. 618. See, State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 6 N. W. (2d) 251, 143 A. L. R. 503; State ex rel. Interstate, etc., v. M. St. P. M. A. Comm. 223 Minn. 175, 25 N. W. (2d) 718; 1 Dunnell, Dig. & Supp. §§ 1397, 1402.

[3]As to collateral attack, see Minneapolis Brg. Co. v. City of East Grand Forks, 118 Minn. 467, 136 N. W. 1103.

ty on the line of such street. Two of these persons, as contract purchasers, have a property interest in ten abutting lots and as such have petitioned for a vacation of the street. Two other persons, the relators, who are owners of the two remaining lots, appear as objectors.

■ Obviously, petitioners and relators, in the sense of individual persons who own property upon the street line, are equally divided in number, and as *individuals* the petitioners are not in the majority. The city council had no jurisdiction to act, unless § 129 of the charter is to be so construed that petitioners, *solely by reason of their property interest in the greater number of lots, constitute a majority of the property owners.* Is the general phrase "the majority of the owners of the property" to be construed as meaning either the owners of a majority of the lots or as the owners of the greater abutting land area? We think not. It is true that the word "owner" is often used in an ambiguous sense, but that ambiguity usually stems from uncertainty as to the character, quality, or nature of the property interest essential to constitute one an owner.[4] Here, the issue is not what constitutes one an owner, but simply whether the numerical strength of those who are owners in fact is to be determined on a per capita basis or according to the amount or the number of parcels of land which they own. The answer lies in the intent or meaning expressed by the words "the majority of the *owners* of the property on the line of such * * * streets, * * *." (Italics supplied.) Standing by itself, the word "owner" means the person in whom is vested the ownership, dominion, or title of property. Atwater v. Spalding, 86 Minn. 101, 90 N. W. 370. We have no qualifying language to indicate that one person as an owner of property should count for either more or less than another according to the extent of his holding. Significantly, in the second paragraph of the same section petitioners are referred to simply as persons. It is also provided that they shall pay compensation for the vacation of the street, not according to their lineal frontage,

---

[4]See, Annotations, 2 A. L. R. 778, 95 A. L. R. 1085; 42 Am. Jur., Property, § 37; 50 C. J., Property, § 49; 30 Wd. & Phr. (Perm. ed.) 604.

but as the council shall direct. In other words, the entire emphasis is upon the abutting property owners as separate individuals and not upon the quantity or area of their respective street frontage. In the drafting of the charter, if it had been intended that one property owner should count for more than another, so that owners of a majority of the lots, or the owners of the major part of the lineal frontage, should constitute the petitioning majority necessary to give the council jurisdiction to act, no doubt appropriate language would have been used to effect that purpose. The framers of the charter were familiar with the lineal-frontage concept of ownership as distinguished from that of measuring a majority of the owners by a numerical counting of individuals, because in a subsequent section of the charter (§ 243, which relates to petitions of remonstrance against the making of certain public improvements), which was adopted at the same time, the numerical and the lineal-frontage concepts were used in the alternative in prescribing the requisites of a jurisdiction invoking petition.[5] It follows that, as used in § 129, the phrase "the majority of the owners of the property" refers to a majority of the individual owners and not to a majority of the estates or tracts or to a major part of the property fronting on the line of the street. See, State ex rel. Rossman v. Common Council, 98 Minn. 232, 107 N. W. 1129; Rhodes v. City of Springfield, 195 Mo. App. 182, 189 S. W. 641.

It has been argued that to construe the language literally may conceivably lead to an absurd result, in that several individuals who together own only a single lot, or a part thereof, may constitute a majority of the abutting owners. This argument is without merit. It should be noted that the word "majority" refers to a quantity measured by numbers and not by area. If the word "majority" is not applied to the individual property owners, but to the number of lots or parcels which they own, it is possible to picture the equally absurd result of one individual constituting a majority because he owns several insignificant pieces of street frontage. Section 129 of

---

[5]See, "The Charter of the City of St. Paul—with Amendments to November 1, 1947," as published by authority of the council.

the charter speaks for itself, and if it does not accomplish the desired or the best result it should be amended in the regular manner and not by a process of convenient judicial misinterpretation.

The resolution of the St. Paul city council for the vacation of the street described herein, and all proceedings and action taken pursuant thereto, are invalid and void for want of jurisdiction.

Let judgment be entered accordingly.

So ordered.