Kenneth M. BRONNER and Reta M. Bronner, Appellants,

v.

HARMONY AGRI SERVICES, INC., and Jeffrey A. Soma, Appellees.

No. 91–854.

Court of Appeals of Iowa.

Aug. 27, 1992.

Dale L. Putnam of Putnam & Strand, Decorah, for appellants.

Robert J. Cowie, Jr. of Miller, Pierson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellees.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

The plaintiffs, Kenneth and Reta Bronner, have farmed near Cresco since 1972. Due to the widening farm crisis, the Bronners in 1982 began to have serious financial difficulties and filed a Chapter 11 bankruptcy. The defendant, Harmony Agri Services, had done limited business with the Bronners prior to the bankruptcy. After the Bronners converted their Chapter 11 action to a Chapter 7, Harmony arranged to extend credit to the Bronners for crop inputs in the spring planting of 1983. During the 1983–84 crop year, Harmony extended large amounts of credit to the Bronners for crop and feed input. By November 1984 the Bronners owed Harmony approximately $80,000.

In order to secure these debts, Harmony and Kenneth Bronner executed grain con-

tracts for delivery of the 1984 crop to Harmony. On November 8, 1984, Bronner and Harmony entered into a written contract regarding the supplying of the inputs and feed. The contract provided for Harmony to furnish all the necessary hog feed for the remainder of the 1984–85 calendar year. Bronner agreed to apply all the proceeds of the hog sales to the indebtedness with Harmony, except for the sum of $1000 per month to be used by the Bronners as living expenses. Harmony also agreed to supply all the fertilizer and chemicals. On December 14, 1984, Harmony loaned Bronner another $7000 to rent a combine for harvesting.

As of April 30, 1985, the Bronners owed Harmony $33,578.04. On May 2, 1985, Bronner and Harmony entered into another written contract whereby Bronner would deliver 14,000 bushels of corn to Harmony in autumn of 1985. This contract was to satisfy the debt and terminate the relationship between the parties. Harmony did not provide any further funding after April 1985. Bronner, however, received assistance from Farm Service for cash inputs. Harmony agreed to subordinate up to $15,000 of its first security interest in the Bronners' crops to Farm Service for 1985.

In the fall of 1985 Harmony had received only 2,000 bushels of corn from the Bronner harvest. Harmony received no further payments from the Bronners. The record shows that Bronner sold hogs from May 1985 to December 1985 and did not apply any of the proceeds towards the debt with Harmony.

On December 10, 1986, Harmony filed the present actions requesting judgment be made against Bronner for the full amount still owed to Harmony Ag. Bronner moved to have his bankruptcy case reopened to determine the dischargeability of the indebtedness to Harmony. The bankruptcy court subsequently held the May 2, 1985, grain contract to be a valid agreement, not discharged, which the Bronners breached and were therefor liable on the debt. On October 11, 1988, the district court, acting pursuant to the order of the bankruptcy court on the theory of claim preclusion,

granted summary judgment in favor of Harmony against the Bronners in the amount of $428,255.25. On May 10, 1989, the Bronners filed the present action claiming Harmony breached the November 8, 1984, contract. On May 31, 1989, the Bronners filed a notice of appeal.

The Bronners maintain the district court erred in holding their claim was barred. The Bronners argue the record reflects Harmony never raised compulsory counterclaim or any other affirmative defense. They contend at no time throughout the trial did Harmony move for a directed verdict alleging the case was barred as a compulsory counterclaim. The Bronners conclude, therefor, the district court erred in finding the Bronners' claim was barred.

The Bronners also contend the district court erred in holding the contract was rescinded or abandoned by the Bronners, since Harmony never raised such issues at the time of trial. The Bronners maintain they failed to deliver all the crops they had promised because they had to seek fertilizer inputs from another source since Harmony had refused them.

Our review is limited to correction of errors at law. Iowa R.App.P. 4. We affirm the district court.

Rule 29 of the Iowa Rules of Civil Procedure states:

A pleading must contain a counterclaim for every cause of action then matured and not the subject of a pending action, held by the pleader against any opposing party arising out of the transaction or occurrence that is the basis of such opposing party's claim ...

A claim is compulsory if:

1. It arises out of the transaction or occurrence that is the basis of the opposing party's claim;

2. It is then matured;

3. It is not the subject of a pending action;

4. It is held by the pleader against the opposing party; and

5. It does not require the presence of indispensable parties of whom jurisdiction cannot be acquired.

Iowa R.Civ.P. 29 (1991).

A claim arises out of the same transaction or occurrence when there is any logical relationship between plaintiff's claim and the counterclaim. *Harrington v. Polk County Federal Savings and Loan Assoc. of Des Moines,* 196 N.W.2d 543, 545 (Iowa 1972). The status of the November 8, 1984, contract had a logical relationship to Harmony's December 10, 1986, claim regarding money owed by the Bronners. A compulsory counterclaim is mature when the party possessing it is entitled to a legal remedy. *Stoller Fisheries v. American Title Ins. Co.,* 258 N.W.2d 336, 342 (Iowa 1977). If in fact Harmony breached the 1984 contract, the Bronners were entitled to a legal remedy at the time Harmony initiated proceedings in 1986. There was no pending action on the breach claim, and it required no indispensable parties.

We hold the breach of contract claim was a compulsory counterclaim which the Bronners were required to make in the proceedings initiated on December 10, 1986. Consequently, the Bronners are barred from making this claim in the current litigation. It is therefor unnecessary to address the issue of whether the November 1984 contact was rescinded.

The cost of preparing a supplemental appendix for this appeal, on the part of Harmony, shall be paid by Harmony.

AFFIRMED.