**SKY VIEW FINANCIAL, INC., Clinton W. Anderson, and Wendell J. Sollars, Appellees,**

v.

**Dale BELLINGER, Walter Clark, Bob Lauritsen, Barry Waters, Ronald Fletcher, Larry Randolph, Pat Kenealy, and Sun Valley Iowa Lake Association, Appellants.**

No. 95–1459.

Supreme Court of Iowa.

Oct. 23, 1996.

NEUMAN, Justice.

Individual owners of a lakefront property development have appealed summary judgment for the land developers in a dispute over the interpretation of voting rights provisions contained in covenants running with the land. The district court interpreted the covenants to require a "one vote per lot" majority for amendment. We affirm.

Plaintiff Sky View Financial and its only two shareholders, Clinton Anderson and Wendell Sollars, are locked in a feud with defendant Sun Valley Iowa Lake Association, a group representing owners of the lake lots. Background facts concerning the controversy are detailed in *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621 (Iowa 1996) [hereinafter *Sun Valley* ]. Facts pertinent to the current controversy may be summarized as follows:

Quenton Anderson developed farmland into a lake resort area in the 1970s. Buyers of the lake lots formed what would become the first of three property owners associations—the Sun Valley Lake Property Owners Association. In 1988, Anderson sold a major portion of the project to Patten Corporation. Patten established a second landowners association—the Iowa Lakes Association. The two owners associations merged in 1989 with the formation of the Sun Valley Iowa Lake Association, defendants in the current suit [hereinafter "Association"]. In 1992, Patten sold its interest in the development to Sky View Financial. Sky View then deeded some of the lots to Anderson and Sollars, individually.

The appeal before us centers on differences between the restrictive covenants recorded by Patten in 1988 and revisions to those covenants filed by the Association in 1993. At issue are covenants that pertain to voting for amendments on assessments. The 1988 covenants provide in pertinent part:

VII. ASSESSMENTS.

   A. GENERAL. Pursuant to the powers granted to it in its Articles and By–Laws, the Association is hereby expressly authorized and empowered to levy annual assessments against all Lots in the Development. Provided,

Louis R. Hockenberg, Robert M. Holliday, James G. Sawtelle, and Jill Mataya Corry of Sullivan & Ward, P.C., Des Moines, for appellants.

Patrick W. O'Bryan, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

however, except as may be otherwise indicated, *no assessment shall be levied against Lots owned by the Declarant [Patten] or any successor developer.*

. . . .

XVI. TERM AND AMENDMENT. The provisions of this Declaration shall affect and run with the land and shall exist and be binding upon all parties claiming an interest in the Development until January 1, 2015, after which time the same shall be extended for successive periods of ten (10) years each. *This Declaration may be amended by the affirmative vote of a majority of the Owners of all Lots in the Development* and by recording an amendment to this Declaration duly executed by the requisite number of such Owners required to effect such amendment.

(Emphasis added.) Pursuant to these covenants, the Association levied annual assessments against the lots owned by Anderson and Sollars. They refused to pay, considering themselves developers and therefore exempt from payment. In April 1993, the Association initiated an action against them to collect delinquent assessments. *See generally Sun Valley*, 551 N.W.2d at 628–29. We ultimately affirmed the district court's finding that Sky View was a successor developer exempt from assessment, but Anderson and Sollars were individual owners who could be assessed. *Id.* at 640.

Meanwhile, two days after filing the *Sun Valley* action, the Association voted to revise the 1988 bylaws and restate the 1988 covenants. The vote took place at an annual meeting of the owners which Sky View officials chose not to attend. The 1993 restated covenants provide in pertinent part:

### ARTICLE VII

### ASSESSMENTS

A. GENERAL. Pursuant to the powers granted to it in its Articles and By-laws, the Association is hereby expressly authorized and empowered to levy annual, special, and emergency assessments against *all* Lots in the Development.

. . . .

### ARTICLE XVI

### TERM AND AMENDMENT

. . . . This Declaration may be amended by the affirmative vote of a majority of the owners of lots in the development, *whereby each owner possesses the right to cast one vote irrespective of the number of lots owned,* and by recording an amendment to this Declaration duly executed by the requisite number of owners required to affect such amendment.

(Emphasis added.) In accordance with these restated covenants, which removed the exemption for developers, the Association again levied assessments against lots owned by Sky View.

Sky View then brought the present suit seeking a declaratory judgment that the 1993 restated covenants are null and void. The parties filed cross-motions for summary judgment. The Association contended that Sky View's action was barred as a matter of law because it should have been raised as a compulsory counterclaim in the *Sun Valley* litigation.

The district court entered summary judgment for Sky View. It rejected the Association's preclusion argument, reasoning that the amended covenants did not even exist at the time the prior suit was commenced. The court also declared the 1993 covenants null and void because they were amended by a simple majority vote of the owners (irrespective of number of lots owned) in violation of Article XVI of the 1988 covenants.

On appeal, the Association urges two grounds for reversal. First, it cites error in the court's failure to find Sky View's present action barred by the prior litigation. Second, the Association insists the court erred in its interpretation of Article XVI of the 1988 covenants regarding voting and, hence, erred in its ruling that the 1993 amendments were null and void.

Our review is for the correction of errors at law. Iowa R.App. P. 4.

■ I. *Compulsory Counterclaim.* The Association contends at the outset that any argument by Sky View regarding the covenants should have been raised by way of compulsory counterclaim in the *Sun Valley* litigation and, because it was not, should now be barred. The question is governed by rule 29 of the Iowa Rules of Civil Procedure. We have said:

A claim is a compulsory counterclaim as contemplated by rule 29 where it arises out of the transaction or occurrence that is the basis of the opposing party's claim if: (1) it is then matured, (2) it is not the subject of a pending action, (3) it is held by the pleader against the opposing party, and (4) it does not require the presence of indispensable parties of whom jurisdiction cannot be acquired.

*Stoller Fisheries, Inc. v. American Title Ins. Co.,* 258 N.W.2d 336, 342 (Iowa 1977) (quoting *Harrington v. Polk County Fed. Sav. & Loan Ass'n,* 196 N.W.2d 543, 545 (Iowa 1972)). While it is true that both the present case and the prior one concern interpretation of the 1988 covenants, our focus must be on whether Sky View could have—or was required to have—challenged the 1993 amendments in the prior litigation. We think not.

■ A compulsory counterclaim is mature when the party possessing it is entitled to a legal remedy. *Id.; Bronner v. Harmony Agri Servs., Inc.,* 490 N.W.2d 861, 863 (Iowa App.1992). The claim has not yet matured until the events giving rise to the cause of action develop. *Stoller,* 258 N.W.2d at 342. In *Telegraph Herald, Inc. v. McDowell,* this court held that a right mature enough to be a compulsory counterclaim under rule 29 "must be presently enforceable, not merely determinable." *Telegraph Herald, Inc. v. McDowell,* 397 N.W.2d 518, 520 (Iowa 1986).

As the district court correctly observed here, "[t]he effect, validity or even the existence of the amendments were not raised as an issue or discussed in the prior proceeding." Indeed, the 1993 amendments were not brought to a vote by the owners association until after the *Sun Valley* petition was filed. It appears doubtful that Sky View could have brought or enforced a counterclaim in the *Sun Valley* action for interpreta-

tion of contractual language not yet promulgated. Accordingly, we find no error in the district court's refusal to dismiss Sky View's petition under rule 29.

■ II. *Validity of Amendments.* At the heart of this controversy is the question whether, as the Association claims, Article XVI of the 1988 covenants permits amendment by a simple majority of lot owners without regard to the number of lots owned by each party voting.

■ Because restrictive covenants are contractual in nature, we apply contract-based rules of construction to interpret them. *Compiano v. Kuntz,* 226 N.W.2d 245, 249 (Iowa 1975). Where the wording of a restriction is ambiguous, its meaning must be strictly construed against the party seeking to enforce it. *Iowa Realty Co. v. Jochims,* 503 N.W.2d 385, 386 (Iowa 1993). However, "[m]ere disagreement over the meaning of a word or phrase does not establish ambiguity for purposes of the rule." *Id.* The crux of the parties' disagreement here turns, not on the meaning of the words, but on their import. In the phrase "[t]his Declaration may be amended by the affirmative vote of a majority of the Owners of all Lots in the Development," the Association stresses the word "Owners," while Sky View places emphasis on the phrase "all Lots."

To support its preferred reading, the Association relies on a line of "one vote per owner" cases which holds that phrases like "a majority of the then owners of the lots affected thereby" or "the majority of the owners of the property" refer to voting strength measured by number of owners, not by area owned. *Cieri v. Gorton,* 179 Mont. 167, 587 P.2d 14, 17 (1978); *Beck v. Council of the City of St. Paul,* 235 Minn. 56, 50 N.W.2d 81, 82 (1951). In *Cieri,* the court rejected on equitable grounds the efforts of two nonresident owners of sixty-nine undeveloped lots to remove *all* restrictive covenants from a 110-lot subdivision over the objection of forty-one resident owners. *Cieri,* 587 P.2d at 17. Citing *Beck,* the court framed the issue as "whether the numerical strength of those who are owners in fact is to be determined on a per capita basis or according to the

amount or the number of parcels of land which they own." *Id.* (quoting *Beck,* 50 N.W.2d at 83). In both cases, the covenants revealed an emphasis on individual ownership irrespective of acreage owned, thus yielding a "one vote per owner" interpretation. *Cieri,* 587 P.2d at 17; *Beck,* 50 N.W.2d at 83.

A contrary line of cases adopts the "one vote per lot" position. In the leading "lot" case, *Diamond Bar Development Corp. v. Superior Court,* 60 Cal.App.3d 330, 131 Cal. Rptr. 458 (1976), the owners of a majority of lots (including the developer) voted to amend protective covenants controlling perimeter fencing. Capturing the essence of the controversy, the court described the question as "whether the draftsman feared a majority tyranny based upon sheer numbers of property owners or a majority tyranny based upon extent of ownership." *Id.,* 131 Cal. Rptr. at 460. The court looked to the covenant document as a whole, finding evidence of a voting system that favored number of lots owned over mere ownership status. This scheme, the court believed, was consistent with an evident drafting intent that influence over amendments would be "commensurate with the extent of [the owners'] investment." *Id.,* 131 Cal.Rptr. at 461. Similarly, in *Cecala v. Thorley,* 764 P.2d 643, 644 (Utah App.1988), the court found the phrase "majority of owners of lots" susceptible to two reasonable interpretations and, thus, looked to the entire agreement to discern the drafter's intent. Noting that the covenant language manifested an intent that land area ownership control the subdivision development, it rejected the *Beck* and *Cieri* analysis in favor of the "one vote per lot" interpretation in *Diamond Bar. Id.* at 645–46.

Guided by these decisions, we first consider the Association's claim that the language at issue is unambiguous and clearly mandates a "one vote per owner" limitation. The claim appears disingenuous given the nature of subsequent amendments. First, the Association found it necessary to amend Article XVI to state that "each owner possesses the right to cast one vote irrespective of the number of lots owned." Were the original language free from ambiguity, no such clarification would be needed. Second, the Association saw fit to amend the voting provisions of the 1988 bylaws. The 1988 bylaws provided that "[t]here shall be one vote and one voting member for each Lot regardless of the number of persons who may have an ownership interest in such Lot, or the manner in which title is held by them." The Association cut this provision from its 1993 bylaws, inserting in its place a rule that "each owner is allowed one vote." If, as the owners argue, the language in the 1988 covenants plainly gives voting strength to a majority of owners and not lots, these self-serving amendments would be unnecessary.

We believe the district court rightly found the covenant language ambiguous and in need of interpretation. Looking first at the controverted language itself, the court wisely reasoned that the reference to "all Lots" would be meaningless unless *all* lots were considered for voting purposes. Expanding on that notion, the court found from a review of the entire document that "[i]t doesn't seem remotely logical or probable that the developer intended to abdicate [its powers] to the individual property owners once two lots, a majority of two out of three, had been sold." We entirely agree. Although progress on the common areas of the development is well underway, the great majority of lots remain undeveloped. The district court was sensitive to the considerable investment made by Sky View and the power that investment should command relative to individual ownership. Consistent with the covenants, the balance of control will eventually shift as more lots are sold and the developer no longer enjoys majority status.

We find no error in the court's decision to invalidate the purported amendments to the 1988 covenants. We, therefore, affirm the court's judgment for Sky View, Anderson and Sollars.

**AFFIRMED.**