WARREN F. PLUNKETT AND OTHERS v.
FIRST NATIONAL BANK OF AUSTIN.
DEPARTMENT OF COMMERCE, RESPONDENT.

115 N. W. (2d) 235.

March 30, 1962—No. 38,235.

232

*Curtis L. Roy, Michael E. Bress, Dorsey, Owen, Barber, Marquart & Windhorst, Raymond B. Ondov,* and *Alderson, Catherwood, Kelley & Ondov,* for relator.

*S. P. Gislason,* for respondent applicants.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review proceedings before the Department of Commerce of the State of Minnesota under Minn. St. c. 45[1] in which an

---

[1]Minn. St. 45.01 provides in part: "The department of commerce shall be under the supervision and control of a commission composed of a commissioner of banks, a commissioner of insurance, and a commissioner of securities."

Section 45.03 provides in part: "The commissioner of banks, the commissioner of insurance, and the commissioner of securities, respectively, shall have and possess all the rights and powers and perform all the duties which, prior to the enactment of Laws 1925, Chapter 426, were vested by law in the superintendent of banks, the commissioner of insurance, and the state securities commission, respectively, * * *."

order was made authorizing the Minnesota Trust Company of Albert Lea to change its name to Minnesota Trust Company of Austin (hereinafter referred to as respondent) and to move its place of business from Albert Lea to Austin; and in which an order was made denying the application of First National Bank of Austin (hereinafter referred to as relator) for a rehearing therein. Relator seeks reversal of both such orders, and an order remanding the case to the department for further proceedings.

The order which granted respondent's application to move and to change its name was made February 23, 1960. A copy thereof was mailed by the department to all parties to the proceedings on February 24, 1960, pursuant to Minn. St. 15.0422.

On August 5, 1960, the petition for rehearing in the proceedings was filed by relator. It is based upon the ground that at the hearing the department proceeded under an erroneous theory and in consequence rejected evidence relating to public demand or need for an institution such as respondent in Austin. The evidence was rejected on the ground that respondent's removal from Albert Lea to Austin would not constitute authority for it to engage in a banking business at Austin but would merely permit it to operate there as a trust company. Relator submits that the respondent is governed by the provisions of Minn. St. c. 47, relating to financial corporations, and that, having failed to comply with its provisions relative to instituting a banking business in Austin, it is without authority to do so. The application for rehearing was denied on August 16, 1960, and on September 14, 1960, this court issued the present writ of certiorari to review the proceedings described.

It is the contention of respondent that the department had no jurisdiction to grant a rehearing and that under Minn. St. 606.01[2] the

---

[2]Minn. St. 606.01 provides: "No writ of certiorari shall be issued, to correct any proceeding, unless such writ shall be issued within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed thereby."

Certiorari will lie to review quasi-judicial proceedings when there is no appeal and no other adequate remedy. State ex rel. Brown v. Board of Public Works, 134 Minn. 204, 158 N. W. 977; In re Guardianship of

certiorari proceedings are unauthorized, since they were not instituted until subsequent to 60 days after notice of the original order was served by mail. Based thereon, respondent has moved to quash the writ.

The facts are as follows: Respondent, Minnesota Trust Company of Albert Lea, was organized under §§ 45.04 to 45.08[3] in 1945. From the date of its organization until February 1960, it was located in Albert Lea where it conducted trust company business. In July 1959, controlling interest therein was acquired by Warren F. Plunkett and his wife, Eleanor. On January 4, 1960, respondent filed an application with the Department of Commerce for authorization to move to Austin and to change its corporate name from Minnesota Trust Company of Albert Lea to First Minnesota Trust Company of Austin. The hearing thereon was held by the Department of Commerce on February 15 and 16, 1960. Relator and Austin State Bank appeared in opposition to the application. As stated above, on February 23, 1960, the application to move was granted, and respondent was authorized to change its name to Minnesota Trust Company of Austin. At the hearing the objectors, including relator, did not challenge respondent's contention that there was a public demand in Austin for the fiduciary

Maloney, 234 Minn. 1, 48 N. W. (2d) 313, 49 N. W. (2d) 576; First Trust & Sav. Bank v. U. S. Fidelity & Guaranty Co. 161 Minn. 88, 200 N. W. 848.

The writ of certiorari is a writ of review in the nature of a writ of error or an appeal. The right of appeal is subject to such conditions as the legislature sees fit to impose. In re Acquisition of Flying Cloud Airport, 226 Minn. 272, 32 N. W. (2d) 560.

[3]Minn. St. 45.08 provides: "Subdivision 1. Unless the language or context clearly indicates that a different meaning is intended, the word defined in subdivision 2, for the purposes of sections 45.04 to 45.07, shall be given the meaning subjoined to it; and the word defined in subdivision 3, for the purposes of chapters 46 to 77, shall be given the meaning subjoined to it.

"Subd. 2. The word 'bank' means any savings bank or bank of discount or deposit or trust company organized under the laws of this state.

"Subd. 3. The word 'department' means the department of commerce of the State of Minnesota."

services of a *trust company* whose activities would be confined to receiving deposits of funds held as trustees, guardians, administrators, and other fiduciary services. They did oppose respondent's transfer, if its objectives were to engage in *banking* activities in Austin, and offered to submit evidence of the lack of public demand or need for such an institution in Austin. Set forth below are statements made at the hearing which indicate the basis upon which the order granting the application to move was made.[4]

---

[4]"Mr. Rasmussen [commissioner of banks]: * * * we * * * believe * * * that the trust company does not have banking powers; that the trust company * * * just has powers * * * to act as executors under wills, administrators, guardianships, corporate trusts, agency appointments, and property management. We believe banking powers as set up under Section 48.82 would have to be asked for under a hearing set up by the Commerce Commission and heard * * * [under] Section 48.69 * * *.

"Mr. Plunkett [for respondent]: * * * petitioner takes no position relative to the Commissioner's statement; * * * it is seeking to move the Minnesota Trust Company *as it presently exists* and as it has existed since it was incorporated in 1945 * * * from Albert Lea * * * to Austin * * * *without expanding or without contracting the powers that it has at the present time.*" (Italics supplied.)

"Mr. Magnusson [commissioner of insurance]: * * * any questions regarding the expansion and contraction of any of the powers granted under the charter are irrelevant to this hearing, inasmuch as if the Commissioner of Banks feels that the officers and directors of this company exceed their powers, he has the right and the power to order a cease and desist statement. The application as given to each member of the Commerce Commission indicates that this is the purpose of this meeting this morning: To change the name and to change the place of business. Any other acts that may transpire subsequent to whatever action is taken by the Commission are something to be considered at a later date or at a hearing for the purpose which we have discussed previously.

* * * * *

"Mr. Richardson [for objector Austin State Bank]: My objection to the position taken by the Commissioner is that final decision as to the ultimate powers of the trust company rests with the Supreme Court; and if the Department here grants the change and the Supreme Court should ultimately find that they do have powers to engage in banking business, accepting deposits and so on, then we have a fourth bank in Austin,

The articles of respondent authorized it:

"(a)   To conduct and operate a trust company as defined by Chapter 47 of Minnesota Statutes 1941, * * * to act as a safe deposit company, trustee, or representative, for or under any Court, public or private corporation, or individual, and as surety or guarantor;

---

without the Commission or the Department here having determined whether or not there was a need for that fourth bank at Austin."

"Mr. Rasmussen: * * * this is a Banking Department matter—not the commission. I am speaking as Commissioner of Banks, who has power to regulate both banks and trust companies. It has been the contention of the Banking Department over the years that under Section 48.65, the trust company * * * could not conduct banking business. Now, under Section 48.65 it also states '* * * that it cannot conduct a banking business as defined in Section 47.02.' When we check 47.02, we find the definition of banking business as that of a commercial savings bank or a savings bank accepting deposits. Referring to Section 48.72, it also states that, under certain conditions, these deposits are to be accepted by a trust company. And, in considering this application, as far as I, myself am concerned, *I would feel that a trust company, to assume these powers as stated in the law, would have to proceed as under Section 45.04 and ask for these powers.* * * *

\* \* \* \* \*

"Mr. Rasmussen [after a recess]: The Commerce Commission has come to a decision. The Commerce Commission has consented to my statement here and feel that it should stand as stated, and that the hearing is for the changes as applied for in the application—that is, to change the name and to conduct its business as it is doing now in Albert Lea; and, therefore, the hearing will continue on that basis.

\* \* \* \* \*

"Mr. Magnusson: * * * We haven't changed our point of view * * * that if, at any time, the Commissioner of Banks feels that you have exceeded your powers, he, as the Commissioner of Banks * * * has the right to act. We are passing on two items before the Commission today. * * * The two points are the change of name and the change of location." (Italics supplied.)

"[Mr.] Plunkett: * * * as we have stated previously * * * it is not our position * * * to either expand its [respondent's] powers or contract its powers. We don't feel it is any issue before this Commission that [it] can either expand or contract these powers at this time."

"[Mr.] Plunkett: * * * This Commission at this hearing could not

"(b) To act as fiscal or transfer agent of any state, municipality, body politic or corporate, individual, partnership or association, and in such capacity to receive and disburse money and transfer and register and countersign certificates of stock, bonds, or other evidences of indebtedness;

"(c) To receive deposits of trust moneys, securities and other

---

alter the powers granted to this company in its charter or Articles of Incorporation. And the Legislature could not now make laws that would change the rights and powers of this company that existed at the time it was incorporated, because those laws would probably be unconstitutional as ex post facto legislation. * * * The Minnesota Trust Company is willing to be bound by [State ex rel. Ervin v. Crookston Trust Co. 203 Minn. 512, 282 N. W. 138] * * *. * * * this is a petition to move the Minnesota Trust Company to Austin, Minnesota, and to change its name. And the question of its powers under the law—the question of whether or not powers under the law give the right to take checking or savings deposits is not on trial before the Commission at this time.

"Mr. Rasmussen: I would agree with that, Mr. Plunkett, that these are not on trial. And actually I agree on this basis, if they were on trial as to taking of deposits and so forth, when we explore reasonable public demand or solvency of any institution, that should be taken into consideration. We feel that, as you say, is not under consideration and, therefore, we are not exploring reasonable public demand as a category, and that's why all your objections have been sustained; because we feel that the company, at this time, under the present law, cannot take or receive deposits."

Mr. A. H. Haakenson, president of Austin State Bank, one of the objectors, after testifying as to banking facilities in Austin, testified as follows:

"Mr. Richardson [for Austin State Bank]: Now, do you have an opinion as to whether or not there is any need in the city of Austin for a fourth—for another financial institution that is engaged in the business of accepting deposits or lending money?

"Mr. Haakenson: I do.

"Mr. Richardson: And what is your opinion?

"Mr. Haakenson: I don't believe that there is a need for an additional institution of that nature.

"Mr. Richardson: Do you have any objection to the transfer of the corporate charter of a trust company to Austin if that company does not have any banking powers?

personal property from any person or corporation, and to loan money on real and personal securities;

"(d)   To act as trustee under any mortgage or bond issued by any municipality or corporate trust not inconsistent with the laws of the State of Minnesota;

"(e)   To accept trusts from and execute trusts for individuals * * *;

"(f)   To take, accept and execute any and all such trusts and powers of whatever nature and description as may be conveyed upon or committed to said company by any person or persons, or any body politic * * *; and to receive and take and hold any property or estate, real or personal, which may be the subject of such a trust; to purchase, invest in, and sell, stocks, bills of exchange, bonds, mortgages and other securities; * * *

"(g)   To be appointed, and to accept the appointment of executor of, or trustee under, the last will and testament, or administer, with or without the will annexed, the estate of any deceased person;

"(h)   To act under the order or appointment of any court of record as guardian, receiver, or trustee of the estate of any minor or any other person, corporation or party;

"(i)   To buy, sell and deal in all kinds of securities and property in its own right and for others on commission, acting in respect thereto as principal, agent or broker."

In its order authorizing respondent to change its name and to move from Albert Lea to Austin, the department found:

---

"Mr. Haakenson:   No, I do not.

\* \* \* \* \*

"Mr. Roy [for relator]: * * * What did you understand by the words used in that question, 'If that trust company has no banking powers'?

"Mr. Haakenson:   I assume that it ruled out the services other than the fiduciary type commonly handled by trust companies.

"Mr. Roy:   What do you mean 'fiduciary'?

"Mr. Haakenson:   Handling of executorships, guardianships, trusteeships, and that type of thing.

"Mr. Roy:   What with respect to the reception of deposits?

"Mr. Haakenson:   We would be against it, of course."

"1. That there now exists a trust company known as the Minnesota Trust Company of Albert Lea, Minnesota, for which trust company applicants propose to amend the Certificate of Incorporation to change the name * * * and changing its place of business from Albert Lea, Minnesota, to Austin, Minnesota; * * *

\* \* \* \* \*

"3. That there is a reasonable public demand for such trust company in such location;

\* \* \* \* \*

"5. That the probable volume of business in such location is sufficient to insure and maintain the solvency of the trust company in such location and the solvency of the existing financial institutions in such locality, * * *."

It concluded:

"That, *upon compliance with the conditions and restrictions prescribed by the Commissioner of Banks* and upon amendment of the Certificate of Incorporation as hereinbefore set forth the application should be, and hereby is, granted.

\* \* \* \* \*

"Pursuant to the foregoing * * * It Is Ordered, that the application * * * should be granted, and *the Commissioner of Banks is directed to issue his authorization* providing for the continuance of the above-mentioned charter now issued to Minnesota Trust Company of Albert Lea, Minnesota, in the new location, under the name 'Minnesota Trust Company of Austin, Minnesota.' " (Italics supplied.)

On March 10, 1960, the commissioner of banks wrote to respondent consenting to the order of the department authorizing its change of name and location. Shortly afterwards, on March 13, 1960, respondent wrote the commissioner of banks that it contemplated receiving time and demand deposits in Austin as authorized by Minn. St. 48.82. On March 18, 1960, the commissioner of banks replied as follows:

"* * * the banking department orders the directors and officers of the Minnesota Trust Company of Austin, Minnesota to refrain and

desist from receiving non-fiduciary deposits both checking and savings plus other banking operations * * *."

On March 21, 1960, respondent again wrote the commissioner of banks, stating that it did not concur with the commissioner's conclusions and would not be bound by its instructions to refrain and desist from receiving such deposits. On March 25, 1960, the banking commissioner reiterated his position and again directed the trust company to cease and desist from receiving nonfiduciary deposits.

On March 25, 1960, respondent filed an application for authority to assume the additional powers of a state bank under §§ 48.69 to 48.73. There was a hearing on this application before the Department of Commerce on April 27, 28, and 29, 1960. The same objectors who had appeared in the proceedings before the Department of Commerce appeared together with others and objected to this application. On July 1, 1960, it was denied by the department on the ground that there was no reasonable public demand for an additional bank in Austin at the time. No appeal was taken from this order.

On July 7, 1960, the commissioner of banks submitted to the attorney general of the state a series of questions relative to the authority of a trust company to establish and maintain savings accounts and the type of investments in which such savings deposits could be placed. On July 22, 1960, in response thereto, the attorney general gave his opinion as follows (Opinion Attorney General, No. 457a-11):

Question

"1. Is it necessary for a trust company to receive the approval of the commissioner of banks under this section [§ 47.23][5] before tak-

---

[5]Minn. St. 47.23, subd. 1, provides: "Except as specifically authorized by other laws of this state, no individual, partnership, unincorporated association, or corporation, other than a savings bank, safe deposit company, or trust company, holding an effective certificate of authority or license issued by the commissioner of banks and subject to and complying with all of the provisions of law relating to such savings banks, safe deposit companies, and trust companies, respectively, shall in any manner display or make use of any sign, symbol, token, letterhead, card, circular, or advertisement stating, representing, or indicating that he, it, or they, are

ing advantage of the provisions of this subdivision [§ 47.23, subd. 1] and accepting such deposits?"

## Opinion

"1. The authority of a trust company to establish a savings department is conferred by M.S. 47.23. That statute specifically authorizes a trust company, regularly incorporated and authorized to do business under the laws of this state, to establish and maintain a savings department. This authorization is clear and unambiguous and leaves no occasion to refer to other sections of the law for construction. Accordingly, a trust company establishing a savings department proceeds upon the authority of the statute and need not secure the permission of the Commissioner of Banks to do so. The commissioner has, of course, the power of supervision indicated in the statute."

## Question

"2. Is the commissioner of banks authorized to approve an amend-

---

authorized to transact the business which a savings bank, safe deposit company, or trust company usually does, or under these provisions is authorized to do; nor shall any such individual, partnership, unincorporated association, or corporation use the words 'savings' or 'trust' or 'safe deposit' alone or in combination in title or name or otherwise, or in any manner solicit business or make loans or solicit or receive deposits or transact business as a savings bank, safe deposit company, or trust company; except that a state bank, or trust company, regularly incorporated and authorized to do business under the laws of this state, may establish and maintain a savings department under the supervision of the commissioner of banks, and may solicit and receive deposits in this savings department and advertise the same as such, and every such trust company having a savings department may use in its name or title, in addition to the word 'trust,' the words 'savings' or 'savings bank.' Savings deposits received by any trust company using the word 'savings' or 'savings bank' in its name or title shall be invested only in authorized securities, as defined by law, and the trust company shall keep on hand, at all times, such securities as deposits in savings bank may be invested in to an amount at least equal to the amount of the deposits, and these securities shall be the representative of, and the fund for, applicable first and exclusively to the payments of, the savings deposits. Deposits received by the trust company subject to its right to require notice of withdrawal evidenced by passbooks shall be deemed savings deposits."

ment to the Certificate of Incorporation of a trust company to enlarge upon its powers to take advantage of the provisions of this subdivision?"

## Opinion

"2. M.S. 47.12 provides a corporation may be formed for the purpose, among others, of transacting business as a trust company in accordance with the laws relating thereto. M.S. 300.025 prescribes the contents of the certificate of incorporation for corporations formed for the purposes specified in § 47.12. M.S. 300.06 requires the approval of the Commissioner of Banks upon the certificate of incorporation of a financial corporation. M.S. 300.45 provides for the amendment to the certificate of incorporation. M.S. 47.16 relates to the certification of the Commissioner of Banks as to the regularity of an amendment to the articles of incorporation. Your question is answered in the affirmative."

## Question

"3. It is noted that in the event that a trust company follows that line wherein it amends its title to include the words 'savings' or 'savings bank' that such funds as are accepted for deposits shall be invested only in authorized securities as defined by law. Do the words 'authorized securities' as therein provided include only Section 50.14 or may they be construed to also include the provisions of section 50.145 and 50.146?"

## Opinion

"3. That portion of the above quoted statute providing, 'Savings deposits received by any trust company using the words "savings" or "savings bank" in its name or title shall be invested only in authorized securities, as defined by law,' refers to and includes only those securities which are described as authorized securities in M.S. 50.14. In this respect M.S. 50.14, subd. 1, provides:

" 'Except * * *, the term "authorized securities" whenever used in the statutes and laws of this state shall be understood as referring to the following described securities in which the trustees of any savings bank shall invest the money deposited therein and which at the time of the purchase thereof are included in one or more of the following classes named in subdivisions 2 to 14. [Section 50.14, subds. 2 to 14, lists the classes or types of securities authorized for investment, except

for investment of trust funds by corporate or individual trustees, whenever the term "authorized securities" is used in the statutes.]'

"M.S. 50.145 and 50.146 specifically apply to mutual savings banks only."

### Question

"4. Would the investment powers as defined include any other investment privileges of a savings bank?"

### Opinion

"4. This question is covered by our answer to question 3. Your question is answered in the negative."

### Question

"5. There is some question as to whether or not a savings department referred to by Subdivision 1 includes certificates of deposit as well as the usual savings accounts. Would such a savings department be limited to savings accounts or may it accept certificates of deposit with a stated rate of interest and with definite maturities?"

### Opinion

"5. M.S. 47.23 authorizes the receipt of 'savings deposits.' We do not consider that the last sentence of subd. 1 providing 'deposits received by the trust company subject to its right to require notice of withdrawal evidenced by passbooks shall be deemed savings deposits' was meant to exclusively define savings deposits as that term is used in this section. We therefore determine that the trust company may issue certificates of deposit for savings deposits received in its savings department as an incident to its authority to receive such deposits. The authority * * * to issue certificates of deposit appears to be incidental to their authority to receive deposits * * *."

Following the attorney general's opinion, respondent publicly announced its intention to offer trust services for the handling of "Savings Accounts, Time Deposits, Fiduciary Checking Accounts, and other Banking Services" and advertised that it had a banking and savings department; that it had checking and time deposit accounts available to corporations, trustees, guardians, administrators and executors of estates, and trust accounts of attorneys at law; and that it also provided other banking services.

In the application for rehearing filed with the Department of Commerce on August 5, 1960, relator set forth that:

"The purpose of the rehearing is to have the Commission vacate its previous order which permitted the Trust Company to move * * * because of and in view of evidence now available which discloses that the Trust Company not only intends to engage in various aspects of the banking business in Austin, but that the Trust Company is presently engaging in the banking business in Austin. * * * The questions of the needs of an institution performing such services in Austin * * * were simply not presented or considered at the previous hearing. Thus, the previous Order was passed under a misapprehension and on a mistake of law (viz.: that a Trust Company could not exercise any banking powers), and upon a mistaken assumption of fact (viz.: that the Trust Company would not exercise any banking powers in Austin). The newly discovered evidence establishes the contemplation of the Trust Company to exercise such powers * * *."

It is relator's contention that there was never a valid hearing on respondent's application to move to Austin and to there engage in the business above described because evidence relative to a reasonable public demand for such additional banking activity was rejected; and because no evidence was presented or considered from which it could be determined whether the volume of banking business in Austin and the surrounding territory was sufficient to insure the solvency of respondent and the existing banks in this locality if respondent were permitted to engage in the described banking activities there.

In its order dated August 16, 1960, denying relator's petition for rehearing, the Department of Commerce set forth the following:

"It appears from the files and records herein that there was a full and complete hearing had upon the matter in question, and that The First National Bank of Austin, Minnesota, and its counsel appeared and took part therein, and thereafter received due notice, by registered mail, of the order of the Department of Commerce dated February 23, 1960, granting the application of Warren F. Plunkett et al and Minnesota Trust Company of Albert Lea for authority to amend the Certificate of Incorporation changing its name to Minnesota Trust

Company of Austin and changing its place of business to the city of Austin, Minnesota.

"Now, THEREFORE, by reason of the foregoing, the Department of Commerce is of the opinion that it has no jurisdiction or authority to grant the petition herein, and IT IS ORDERED that said petition be, and the same is, in all things DENIED."

■ Sections 15.0411 to 15.0422, known as the Administrative Procedures Act, set forth the rules governing procedure in various state administrative agencies including the Department of Commerce as well as the commissioner of banks (§ 15.0411, subd. 2). Under § 15.0411, subd. 3, it is provided that the word "rule" as used therein shall include every regulation "adopted by an agency * * * to implement or make specific the law enforced or administered by it or to govern its organization or procedure, * * *." Section 15.0412, subd. 1, specifically provides:

"In addition to other rule-making powers or requirements provided by law each agency may adopt rules governing the formal or informal procedures prescribed or authorized by sections 15.0411 to 15.0422. Such rules shall include rules of practice before the agency and may include forms and instructions. * * * an agency may promulgate reasonable substantive rules and regulations and may amend, suspend or repeat the same, but such action shall not exceed the powers vested in the agency by statute."

Section 15.0413, subd. 1, provides that "[e]very rule or regulation filed in the office of the secretary of state * * * shall have the force and effect of law." Sections 15.0418 to 15.0422 set forth in detail requirements with reference to notice and hearing in contested matters before such agencies. Section 15.0422 provides in part:

"Every decision and order adverse to a party of the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by a statement of the reasons therefor. * * * *Parties to the proceedings shall be notified of the decision and order in person or by mail.*" (Italics supplied.)

■ Neither the Administrative Procedures Act (§§ 15.0411 to

15.0422) nor Minn. St. cc. 45, 47, or 48, relating to banks, trust companies, and financial institutions, contains any provision requiring either the Department of Commerce or the commissioner of banks to accept or consider petitions for rehearings in matters determined in proceedings before them, or authorizing appeals to this or any district court from the decisions rendered by such agencies.[6] In the absence thereof any judicial review of their proceedings or decisions would be limited to review by certiorari and must meet the requirements of § 606.01. State ex rel. Brown v. Board of Public Works, 134 Minn. 204, 158 N. W. 977.

■ As stated above, respondent on January 4, 1960, initiated proceedings in the Department of Commerce under § 47.10 for the purpose of procuring an order changing its name and moving its office from Albert Lea to Austin. Section 47.10 provides that any such corporation may change its location upon the written approval of the commissioner of banks. But determination of this question appears to have been taken over by the Department of Commerce under § 45.04. The procedure for making such determination was recognized as valid by the attorney general in opinions furnished at the time the Securities Commission performed the functions now exercised by the Department of Commerce.[7] Accordingly, when respondent made its initial move, a form for the application was provided by the Department of Commerce.[8] Later, with the commissioner of banks presiding, it proceeded

---

[6]While acceptance of petition for rehearing was discretionary (Anchor Cas. Co. v. Bongards Co-op. Creamery Assn. 253 Minn. 101, 91 N. W. [2d] 122), its denial did not enlarge time for certiorari under Minn. St. 606.01. See, State ex rel. Virginia & Rainy Lake Co. v. Bashko, 127 Minn. 519, 148 N. W. 1082.

Section 45.07 provides that in case of a denial of an application for a certificate for a new bank by the Department of Commerce "the supreme court, upon petition of any person aggrieved, may review by certiorari any such order or determination of the department of commerce." This section would have no application to a review of the order involved here.

[7]See, Opinions Attorney General, No. 29-A-22, April 21, 1919, and No. 616-C-1, October 12, 1923.

[8]Minn. St. 45.04 requires that applications thereunder be filed with the Department of Commerce, but that the commissioner of banks shall

to hear and determine the matter. The order granting the application was signed for the department by the commissioner of securities who is the designated secretary of this department under § 45.03.[9] The record clearly establishes that it was the custom of this department to have its orders signed on its behalf by its secretary. The order specifically directed the commissioner of banks "to issue his authorization providing for the continuance of the above-mentioned charter now issued to Minnesota Trust Company of Albert Lea, Minnesota, in

receive the fee for investigating the application. It further provides that the Department of Commerce shall fix a time for hearing and shall decide whether or not the application be granted; that if it determines that it be granted, it shall make and file in the office of the commissioner of banks within 90 days, its order to such effect; and that if the application be denied, notice of such denial shall be given by registered mail to one of the incorporators and that upon such denial the commissioner of banks shall refuse to issue the certificate of authorization.

[9]Minn. St. 45.01 provides: "The department of commerce shall be under the supervision and control of a commission composed of a commissioner of banks, a commissioner of insurance, and a commissioner of securities. * * * The commission shall adopt a seal with the words 'Department of Commerce of Minnesota' * * *."

Minn. St. 45.03 provides in part: "The commissioner of banks, the commissioner of insurance, and the commissioner of securities, respectively, shall have and possess all the rights and powers and perform all the duties which, prior to the enactment of Laws 1925, Chapter 426, were vested by law in the superintendent of banks, the commissioner of insurance, and the state securities commission, respectively, except that * * * all matters pertaining to * * * application for the organization and establishment of new financial institutions under Laws 1919, Chapter 86 [§ 1 of which is now Minn. St. 45.04] * * * shall be determined by the commission in the manner provided by the laws defining the powers and duties of the superintendent of banks, the commissioner of insurance, and the state securities commission, respectively, or, in the absence of any law prescribing the procedure, then by such reasonable procedure as the commission may prescribe; * * *. The commission shall review, and may affirm, reverse, modify, amend, or abrogate all quasi-judicial acts of a single commissioner upon written request and application of the party aggrieved * * *. The commissioner of banks shall be chairman, and the commissioner of securities shall be secretary of the commission."

the new location, under the name 'Minnesota Trust Company of Austin, Minnesota.' " This order of the department was dated February 23, 1960, and served by mail pursuant to § 15.0422 on February 24, 1960. On March 10, 1960, pursuant to § 47.10, the commissioner of banks forwarded to respondent his written consent thereto. The proceedings outlined establish that respondent has complied with any statutory requirements insofar as the same relate to its change of name and location.

■ Since there is no statutory provision for judicial review by appeal insofar as the described proceedings or order are concerned, it would follow that any judicial review thereof must be sought under § 606.01, governing reviews by certiorari, and presumably relator chose to adopt this method of procedure here. Its petition for a rehearing was not made until August 5, 1960. It was denied on August 16, 1960, and on September 14, 1960, the present writ of certiorari was issued by this court. But since there are no statutory provisions for rehearings in matters determined by the Department of Commerce or the commissioner of banks; and since the present writ was issued long after the expiration of 60 days after relator had received notice of the order of the Department of Commerce, the conclusion is inescapable that the present proceedings are barred by the limitations prescribed in § 606.01, and that the courts no longer have jurisdiction to determine the validity of the department's order. State ex rel. Ebert v. Himsl, 170 Minn. 101, 212 N. W. 29; In re Consolidation of County Ditches and Judicial Ditch No. 19, 165 Minn. 493, 206 N. W. 718; In re Judicial Ditch No. 2, 163 Minn. 383, 202 N. W. 52, 204 N. W. 318.

It would follow that respondent's motion to quash the writ must be granted. Our decision, of course, is not determinative of respondent's right to engage in practices in Austin which relator contends constitute banking and hence would require authorization by the commissioner of banks. Rather it will leave the order of the Department of Commerce (consented to by the commissioner of banks) to just what is expressed therein—that respondent may change its name to Minnesota Trust Company of Austin, and may remove its place of business *as a*

*trust company* from Albert Lea to Austin. Nothing further than this is now before us.

Writ quashed.

Mr. Justice Rogosheske, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.