**Marlene MEATH, Respondent,**

v.

**HARMFUL SUBSTANCE COMPENSATION BOARD, petitioner, Appellant.**

No. C6–94–76.

Supreme Court of Minnesota.

June 20, 1996.

Hubert H. Humphrey, III, Attorney General, Jocelyn F. Olson, Asst. Attorney General, St. Paul, for Appellant.

Neal J. Robinson, Duane E. Arndt, Arndt & Benton, P.A., Minneapolis, for Respondent.

## OPINION

COYNE, Justice.

The Harmful Substance Compensation Board denied respondent Marlene Meath's claim for compensation from the harmful substance compensation account established pursuant to Minn.Stat. §§ 115B.20 and 115B.26, subd. 1 (1992). Meath then petitioned for certiorari to the court of appeals. In response to the Board's contention that, pursuant to Minn.Stat. § 115B.35, subd. 8 (1992), the court lacked jurisdiction to review the Board's decision, the court of appeals held that availability of judicial review of an administrative agency's quasi-judicial decisions is constitutionally mandated (citing Minn. Const. art. III, § 1). Because a decision of the Harmful Substance Compensation Board either to grant or deny compensation is not a quasi-judicial act, we conclude that neither the court of appeals nor this court has jurisdiction to review the Board's decision and we reverse.

A decision by either a judicial or quasi-judicial body denotes binding effect on whatever party or parties are before it—unless, of course, the decision is later overturned by a higher ranking judicial or quasi-judicial authority. In such cases the rights of the parties are irrevocably fixed by the final decision. Conversely, a decision by the Harmful Substance Compensation Board binds no one except a claimant who has received and accepted an award. Only a claimant who has pocketed money from the harmful substance compensation account is

precluded from bringing an action in court for the same injury. Minn.Stat. § 115B.31, subd. 1(b) (1994).

The Environmental Response and Liability Act provides that a person who has settled an injury claim or procured a judgment against a responsible person may not file a claim for compensation from the account unless the judgment cannot be satisfied. Minn. Stat. § 115B.31, subd. 1(a) (1994). A person may not file a claim with the board while an action is pending before a court, and a claimant may not commence an action while his or her claim is pending before the board. Minn.Stat. § 115B.31, subd. 4 (1994). Inasmuch as the statute also provides that the statute of limitations for any civil action is suspended during the period of time that a claimant is precluded by the statute from commencing an action, *id.*, it seems apparent that the legislature has simply afforded claimants an alternative procedure for procuring compensation. Failure of that procedure to produce the desired result does not, however, prejudice the claimant. Because the statute prohibits both judicial review of the board's denial of the claim and the filing of a new claim with the board for the same injury, the board's denial is final and it must be conceded, we think, the claim is no longer pending before the board. Therefore, the claimant is no longer precluded from commencing a civil action against the responsible party or parties.

Not only does the statute repose absolute discretion in the board, whose decision whether to award compensation and, if so, how much, is not subject to judicial review, but the statute also provides the claimant with a durable option either to proceed at common law against the responsible persons or to file a claim for compensation from the Harmful Substance Compensation Board or its successor. The durability of the option has been forged by the statutory provisions which permit a claimant to file a claim with the board or its successor if the claimant is unable to secure satisfaction from the responsible parties of a judgment already procured in a civil action.

Inasmuch as the statute only precludes commencement of a civil action while a "claim is pending before the board" (section 115B.31, subdivision 4), the implication of the statutory language is, as we have previously explained, that the bar to commencement of a civil action against responsible parties falls when the board denies the claim. Somewhat less obvious is the inference that because section 115B.31, subdivision 1(b) provides:

A person who has filed a claim with the board for an eligible injury or damage, and who has received and accepted an award from the board, is precluded from bringing an action in court for the same eligible injury or damage,

the preclusion from commencing a civil action disappears when the claimant rejects the board's award.[1]

If the bar to a civil action drops when the claimant refuses to accept the board's award, it becomes even more apparent that a decision by the Harmful Substance Compensation Board to award compensation is not a decision at all. That the board expresses its willingness to award a sum of money to the claimant from the harmful substance compensation account does not resolve the claim; the board's "decision" is nothing more than an offer which the claimant may reject.

Furthermore, whenever the injured person brings a civil action against persons alleged to be responsible for the release of a harmful substance, the "findings and decision" of the board are inadmissible in that action. Minn. Stat. § 115B.31, subd. 2 (1994). Although, if the claimant attempted to bring an action as the real party in interest, the fact that the claimant received and accepted an award from the board would no doubt be admissible to prove that the claimant was precluded from bringing that action, that the board denied the claim altogether or awarded compensation which the claimant rejected could

---

1. The Environmental Response and Recovery Act does not prescribe the manner or time for closing a claim filed with the board but only for inactivating a claim, Minn.Stat. § 115B.32, subd. 1 (1994), and nothing in the record before us indicates whether a claim is no longer pending after a claimant rejects an award.

not be admitted in the civil action for any purpose.[2]

The board may investigate a claim filed with it and decide whether it wishes to award the claimant compensation, but in so doing it is not acting quasi-judicially. It is true, as the concurrence indicates, that the term "quasi-judicial" has sometimes been applied to distinguish executive decisions from legislative decisions. *E.g., Oakman v. City of Eveleth,* 163 Minn. 100, 109, 203 N.W. 514, 517–18 (1925). If, however, every administrative decision which is based on evidentiary facts developed through investigation can for that very reason be characterized as "quasi-judicial," then almost every administrative decision is "quasi-judicial" even though few such decisions adjudicate any right or obligation of contending parties. For example, the highway department may investigate traffic flow at an intersection when considering which of two recommendations contained in the manual is applicable: that directing installation of a semaphore or that calling for the installation of two- or, perhaps, four-way stop signs. Although it depends on some investigation and the development of certain facts, the decision that a semaphore is required hardly constitutes a "judicial act performed by one not a judge," and to even suggest that judicial review of that decision is constitutionally required would be ludicrous.

Because the denial of compensation from the harmful substance compensation account is not a quasi-judicial decision, we see no reason to mention *In re Haymes,* 444 N.W.2d 257 (Minn.1989), much less to engage in an attack on dictum contained there. *Haymes* involved a disciplinary proceeding before the Minnesota Racing Commission. After a contested case hearing before an administrative law judge, the judge ruled that Haymes' employer, who had agreed to pay his legal expenses, could recover from the racing commission the cost of Haymes' successful defense.

The racing commission filed a petition for discretionary review in the court of appeals, which granted the petition and reversed the fee award. On further review this court ruled that neither statute nor the rules of civil appellate procedure authorized a petition for discretionary review of the decision of the administrative law judge and that the court of appeals should have dismissed the racing commission's petition. This court went on to state that the racing commission should have petitioned for a writ of certiorari.

Since the decision in *Haymes* turned on a narrow procedural issue, if the constitutional discussion in *Haymes* is subject to any criticism, it probably should be limited to the observation that there is good reason to limit discussion in judicial opinions to those issues necessary to disposition of the case.

Despite our recognition of this elementary rule of legal writing, we are constrained by the discussion in the special concurrence of *Breimhorst v. Beckman,* 227 Minn. 409, 35 N.W.2d 719 (1949), to attempt to correct what appears to be a misunderstanding of the statutory background of the *Breimhorst* opinion.

Since the enactment of the original Minnesota Workmen's Compensation Act in 1913, it has been recognized that the Act created a statutory system of compensation which has no counterpart at common law. The 1913 Act provided that the statutory system became a part of every employment contract entered into after its adoption unless the contract expressly stated otherwise. Every employer and employee was presumed to have accepted coverage pursuant to the Act unless, at least 30 days before the occurrence of an accident, one had given to the other written notice of the election not to be bound by or to accept the benefits of the Act. The

---

**2.** Although the claimant would not be the real party in interest, it is quite possible that an action could be commenced in the claimant's name against the person or persons alleged to be responsible for the escape of the harmful substance which injured the claimant; for the statute, at Minn.Stat. § 115B.31, subd. 3 (1994), subrogates the board to the claimant's cause of action whenever the claimant receives and accepts an award from the Harmful Substance Compensation Fund. It is probable that if the defendants wished to prove that the named plaintiff was not the real party in interest, the fact that the named plaintiff had received and accepted an award from the board in some unspecified amount would be admissible for that purpose.

1913 Act permitted all employers to be insured or self-insured and provided for the regulation of workmen's compensation insurers and self-insurers. Minn.Stat. §§ 8205, 8227 (1913).

The 1913 Act provided that all settlements of claims for workmen's compensation should be in substantial accord with the statutory compensation schedule and provisions for distribution and that all settlements must be approved by a judge of the district court. If the parties could not agree on a settlement, either party could submit the claim to a judge of the district court, who was to hear and summarily determine the dispute. The judge's decision was conclusive and binding, subject to a right of appeal. In the event of default by the employer, judgment could be entered against the employer and the judgment had the same force and effect as any other judgment of the same court. Minn. Stat. § 8216 (1913).

The 1913 Act was not applicable to workers engaged in rail transportation or interstate commerce, and it exempted farm workers, household help and casual labor. Minn. Stat. § 8202 (1913). Almost immediately the Workmen's Compensation Act was constitutionally challenged on equal protection grounds. *Matheson v. Minneapolis Street Railway Co.,* 126 Minn. 286, 148 N.W. 71 (1914). In response to the contention that abrogation of three defenses in employee actions against employers who elected not to be subject to the Act while preserving the defenses for other employers whose employees rejected the provisions of the Act constituted an improper classification, this court ruled that the classification was neither fanciful nor arbitrary and that a provision that permits any employer and any employee to place himself in either classification was not discriminatory and not inhibited by the constitution. *Id.,* 126 Minn. at 294, 148 N.W. at 75. The court had no trouble in declaring constitutional the exclusion of railroad workers engaged in interstate commerce, over which Congress can exercise exclusive legislative power. Finally, the portion of the Act "most vigorously assailed" was the provision for an action against a third party who is liable for the employee's injury. That the

employer could deduct from the compensation payable by the employer whatever amount the employee received from the third party did not contravene any provision of the constitution. 126 Minn. at 296–97, 148 N.W. at 75–76.

It soon became apparent that despite the stated amounts of compensation payable for permanent partial disability resulting from any of an array of specified disabilities, the parties were often in serious disagreement, and in 1921 the Act was amended to provide for a hearing and decision with respect to eligibility for compensation, medical expenses, and the extent of injury and disability before a referee of the Industrial Commission with a right of appeal *de novo* to the Industrial Commission. For error of law or on the ground that the findings of fact were unwarranted by the evidence, review by certiorari could be had in the supreme court. Minn.Stat. §§ 4302, 4310, 4315, 4320 (1923).

The 1921 Act also provided that if the employer defaulted in payment of compensation due on an award, the employee could apply to the district court for entry of judgment on the award. Minn.Stat. § 4318 (1923). This procedure for securing entry of judgment has been characterized as "in effect a short method for bringing an action for the recovery of money." *Strizich v. Zenith Furnace Co.,* 176 Minn. 554, 556, 223 N.W. 926, 927 (1929). "The findings by the court or industrial commission stand on the same footing as the findings of the judge or jury in ordinary actions." *Id.*

In 1937 the terms of the Workmen's Compensation Act were statutorily incorporated into all employment contracts with the exception of a few expressly exempted occupations. Minn.Stat. § 176.02 (1941).

Although the legislature amended the Act almost every legislative session, the 1937 amendment making the Act compulsory was the last significant change prior to December 15, 1946 when Harriet Breimhorst sustained both compensable and noncompensable injuries arising out of and in the course of her employment as a part-time waitress. While reaching into a cabinet for a towel, she accidentally caused the discharge of a spring gun concealed within the cabinet. *Breimhorst v.*

*Beckman,* 227 Minn. 409, 413, 35 N.W.2d 719, 724 (1949). A shotgun shell loaded with powder but without any shot exploded in her face, necessitating hospitalization and surgical treatment. The employee tendered repayment of her compensation benefits and commenced a civil action against her employer seeking damages for disfigurement which did not impair her employability. The jury awarded damages against the employer, who appealed.

Ms. Breimhorst took the understandable position that if the Workmen's Compensation Act did not cover her disfiguring injury, she should have a right to bring a tort action against her employer to recover damages for her noncompensable injury. Consequently, she attacked the constitutionality of the Act on the grounds that its exclusivity violated the separation of powers provision of the Minnesota Constitution and that it deprived her of both the right to trial by jury and an adequate remedy for her injuries. *Id.,* 227 Minn. at 429–30, 35 N.W.2d at 732.

The court agreed with Ms. Breimhorst's expectation that her nondisabling disfigurement was not compensable under the Act, but it disagreed with her contention that if she could not recover under the Act, she could recover under common law. The court said that the Workmen's Compensation Act was the exclusive remedy and that as long as she had some compensable injury she could not recover under the common law for that part of the injury which was not compensable. One cannot, said the court, split a cause of action. *Id.,* 227 Minn. at 430, 35 N.W.2d at 731–32.

Addressing the separation of powers argument, the *Breimhorst* court remarked that the proceedings before the industrial commission were quasi-judicial. No one had contended otherwise, and in view of the statutory procedure for entering judgment on the commission's award and this court's earlier declaration that the findings of the industrial commission stand on the same footing as the findings of judge or jury, any serious assertion that the proceedings before the industrial commission was not quasi-judicial would have been out of the question.

Finally, *Wulff v. Tax Court of Appeals,* 288 N.W.2d 221 (Minn.1979), is cited in the concurring opinion as authority for the proposition that judicial review of quasi-judicial decisions is not constitutionally mandated. As in *Haymes* and *Breimhorst,* there was in *Wulff* no question of the nature of a decision of the Tax Court: all parties, as well as this court, recognized that the Tax Court exercised quasi-judicial powers. Moreover, unlike an award of workers' compensation, which becomes subject to levy of execution only after entry of judgment in the district court on the employee's motion, a decision of the Tax Court, on filing, automatically becomes an order of the district court. And because the statutory structure of the Tax Court, like that of the workers' compensation system, specifically provides for judicial review, the decisions in these cases are concerned not with whether judicial review of quasi-judicial decisions is constitutionally required, but whether the statutory provision of judicial review renders an administrative agency's exercise of quasi-judicial power constitutional—a quite different question.

In summary, quasi-judicial conduct is marked by an investigation into a disputed claim and a decision binding on the parties. Even though the phrase "quasi-judicial act" has sometimes been so broadly defined that it can be said to include almost any administrative decision based on evidentiary facts, it seems to us that we would be well-advised today to apply the term only to those administrative decisions which are based on evidentiary facts and which resolve disputed claims of rights. There is no dispute with respect to a claim filed with the Harmful Substance Compensation Board, and there is no party adverse to the claimant. The claimant makes no election of remedies by bringing a claim to the board; the only purpose of the board's investigation or hearing is to provide the claimant the opportunity to prove eligibility for an award. The board's decision is not only unenforceable but, in fact, decides nothing except whether to make the claimant an offer of compensation. If the board makes no offer or if the claimant considers the offer inadequate, the claimant has the option of turning his or her back on the board's treatment of the claim. The claimant, unencum-

bered by the board's response, which is inadmissible in a civil action, can then commence a civil action against the person or persons alleged to be responsible for the claimant's injury. The identification and treatment of quasi-judicial acts is complicated enough, it seems to us, without calling something as ephemeral as the board's now-you-see-it—now-you-don't response to a claim the result of the exercise of quasi-judicial authority. And if this court is to decide whether judicial review of a quasi-judicial decision is constitutionally required, that decision should await a case in which there has been prohibition of judicial review of a decision which is indeed quasi-judicial—that is, a decision which determines the rights of contending parties and is binding upon them.

Reversed.

ANDERSON and TOMLJANOVICH, JJ., concur specially.

ANDERSON, Justice (concurring specially).

I concur in the result reached by the majority, but write separately because I do not agree with the majority's conclusion that the decisions of the Harmful Substance Compensation Board (HSCB) are not quasi-judicial acts.

As an administrative agency, the HSCB may perform two different functions: "quasi-judicial" functions and "legislative" functions. *Petition of Northern States Power Co.*, 416 N.W.2d 719, 723 (Minn.1987); *In re Wilson*, 32 Minn. 145, 150, 19 N.W. 723, 726 (1884). When an agency performs a quasi-judicial function, such as when the agency receives evidence in order to make factual findings, weighs that evidence as would a judge in a trial, and applies a prescribed standard to reach a conclusion that affects the legal interests of the persons before it, a reviewing court applies the "substantial evidence" test. *Hibbing Taconite Co. v. Minnesota Pub. Serv. Comm'n*, 302 N.W.2d 5, 9 (Minn.1980). In contrast, when an agency performs a legislative function, such as when the agency

exercises legislative discretion by balancing competing concerns and choosing among public policy alternatives, a reviewing court will uphold the agency's action unless the action is shown by clear and convincing evidence to exceed the agency's statutory authority or unless the result is shown by clear and convincing evidence to be unjust, unreasonable, or discriminatory. *Petition of Northern States Power*, 416 N.W.2d at 723. An agency such as the HSCB may not exercise a "judicial" function because such conduct would encroach upon the constitutional power sphere of the judicial branch and would violate separation of powers principles. Minn. Const. art. III, § 1.[1]

Respondent Marlene Meath filed a claim with the HSCB pursuant to Minn.Stat. § 115B.32 (1994). An HSCB member investigated Meath's claim and pursuant to Minn. Stat. § 115B.35, subds. 1 & 4 (1994), the investigating HSCB member prepared a preliminary report denying the claim. Meath challenged the preliminary decision pursuant to Minn.Stat. § 115B.35, subd. 6, and appeared before the HSCB in an uncontested case hearing to present additional evidence to support her claim. After considering the additional evidence, the HSCB decided that respondent Marlene Meath was not entitled to receive compensation from the Harmful Substance Compensation Account.

Meath sought to obtain judicial review of the HSCB's decision. The usual avenue used to obtain judicial review of an administrative decision is the Minnesota Administrative Procedure Act (MAPA), Minn.Stat. ch. 14, which provides that any person aggrieved by a final decision in a contested case is entitled to judicial review of the decision. *See* Minn. Stat. §§ 14.63–.68 (1994). But Meath did not participate in a contested case before the HSCB and, therefore, the judicial review provisions of the MAPA were not available to her. *See* Minn.Stat. § 115B.35, subds. 6 & 7.

To obtain judicial review of an administrative agency's quasi-judicial decisions when no appeal procedure is provided by statute and no other adequate remedy exists, the person

---

1. Article III, § 1 of the Minnesota Constitution divides the state government among "three distinct departments"—legislative, executive, and judicial—and declares that none "shall exercise any of the powers properly belonging to either of the others * * *."

seeking review must resort to certiorari.[2] Believing that the proceedings before the HSCB were quasi-judicial, Meath sought review of the HSCB's decision by petitioning the court of appeals for a writ of certiorari. The legislature, however, has attempted to entirely preclude judicial review of the HSCB's compensation decisions. The HSCB's enabling statute provides: "A final decision of the board made under this section is conclusive on all matters decided. There is no right to judicial review of a final decision of the board." Minn.Stat. § 115B.35, subd. 8. It is difficult to imagine how the legislature could have more clearly expressed its intent to preclude judicial review of the decisions of the HSCB. Because the legislature has attempted to preclude judicial review of HSCB compensation decisions, this court must address the question whether this attempt violates the Minnesota Constitution's separation of powers provision, Minn. Const. art. III, § 1.

The majority concludes that the legislature's preclusion of judicial review of HSCB decisions does not violate separation of powers principles by encroaching upon the powers of the judicial branch and that neither the court of appeals nor this court has juris-

diction to review HSCB decisions. I agree with this conclusion. However, the majority concludes that the decisions of the HSCB are not quasi-judicial acts and states that the HSCB's decisions are ephemeral now-you-see-it—now-you-don't responses to a petitioner's claim for compensation. In reaching this conclusion, the majority correctly notes that the identification and treatment of quasi-judicial acts is complicated and that the phrase "quasi-judicial act" has sometimes been broadly defined by this court. It is this latter observation which is the focal point of my disagreement with the majority's opinion. The type of function performed and the powers exercised by the HSCB are consistent with what we have previously identified as quasi-judicial actions. The HSCB conducts an investigation, finds facts, applies the statutory framework to those facts to determine whether a claimant is entitled to receive compensation from the Harmful Substance Compensation Account, and issues written decisions which include the reasons for the decision.[3] This constitutes quasi-judicial action as we have described it under prior caselaw.[4] While I agree with the majority's conclusion that neither the court of appeals

---

**2.** The constitutional principle of separation of powers requires the judiciary to refrain from reviewing de novo a quasi-judicial decision of an administrative agency. *Dokmo v. Independent Sch. Dist. No. 11*, 459 N.W.2d 671, 674 (Minn. 1990); *Sellin v. City of Duluth*, 248 Minn. 333, 337–38, 80 N.W.2d 67, 71 (1956). Therefore, unless a statute or appellate rule creates a right to seek review, judicial review of an administrative agency's quasi-judicial decisions can be obtained only by a petition for a writ of certiorari. *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992); *In Re Haymes*, 444 N.W.2d 257, 259 (Minn.1989); *Plunkett v. First Nat'l Bank of Austin*, 262 Minn. 231, 233 n. 2, 115 N.W.2d 235, 237 n. 2 (1962); *State, ex rel. McGinnis v. Police Civ. Serv. Comm'n of Golden Valley*, 253 Minn. 62, 71, 91 N.W.2d 154, 158 (1958); *Beck v. Council of the City of St. Paul*, 235 Minn. 56, 58, 50 N.W.2d 81, 82 (1951). The limited and deferential review provided by writ of certiorari ensures that the judiciary does not encroach upon the constitutional power spheres of the other two branches of government. *See State ex rel. Ging v. Board of Educ.*, 213 Minn. 550, 570–71, 7 N.W.2d 544, 555–56 (1942).

**3.** At oral argument, the HSCB was willing to concede that its compensation determinations are quasi-judicial.

**4.** *See, e.g., City of Shorewood v. Metropolitan Waste Control Comm'n.*, 533 N.W.2d 402, 404 (Minn.1995) (explaining that "[t]he term 'quasi judicial' indicates acts of the city officials which are presumably the product or result of investigation, consideration, and deliberate human judgment based upon evidentiary facts * * * ") (quoting *Oakman v. City of Eveleth*, 163 Minn. 100, 108–09, 203 N.W. 514, 517 (1925)); *In re Haymes*, 444 N.W.2d 257, 259 (Minn.1989) (stating "when the administrative law judge also decided the threshold issue of statutory construction as to [the] legal entitlement to attorney fees, this was an exercise of quasi-judicial powers"); *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 417 (Minn.1981) (explaining that a city council's decision to grant a zoning variance or special use permit is quasi-judicial because "the zoning authority is applying specific use standards set by the zoning ordinance to a particular individual use"); *Appeal of Signal Delivery Serv., Inc.*, 288 N.W.2d 707, 710 (Minn.1980) (directing that an administrative agency acts in a quasi-judicial manner when it "hears the views of opposing sides presented in the form of written and oral testimony, examines the record and makes findings of fact").

nor this court has jurisdiction to review HSCB decisions, I do so on different grounds. I conclude that the lack of finality and the voluntary nature of the HSCB's compensation procedures allow its quasi-judicial decisions to retain their non-"judicial" character even absent the judicial review precluded by the legislature.

This court's decision in *In re Haymes,* 444 N.W.2d 257 (Minn.1989), contemplates that some form of judicial review must exist when an administrative agency performs a quasi-judicial function. In *Haymes,* we stated:

> [U]nder the separation of powers clause of our state constitution, judicial review must be provided for administrative agency decisions involving the exercise of quasi-judicial powers. *See, e.g., Breimhorst v. Beckman,* 227 Minn. 409, 433, 35 N.W.2d 719, 734 (1949). We have been quite emphatic on this point. *Wulff v. Tax Court of Appeals,* 288 N.W.2d 221, 222–223 (Minn. 1979). While judicial review of a judicial branch decision is not constitutionally required, *see Appeal of O'Rourke,* 300 Minn. 158, 220 N.W.2d 811, 815 (1974), judicial review of an executive branch's quasi-judicial decision is constitutionally mandated.

444 N.W.2d at 258. The *Haymes* decision announced for the first time that the Minnesota Constitution *mandates* judicial review of an agency's quasi-judicial functions. The *Haymes* decision, if it precisely announced the true constitutional rule, would render unconstitutional the legislature's attempt to preclude judicial review of the HSCB's quasi-judicial compensation decisions. Although *Haymes* properly directed that, ordinarily, judicial review must exist when an administrative agency exercises quasi-judicial powers, I believe that *Haymes* too broadly announced the true constitutional rule.[5]

As authority for the rule mandating judicial review of an administrative agency's qua-

si-judicial decisions, the *Haymes* court cited *Breimhorst v. Beckman,* 227 Minn. 409, 35 N.W.2d 719 (1949), and *Wulff v. Tax Ct. of App.,* 288 N.W.2d 221 (Minn.1979). In *Breimhorst,* the issue concerned the constitutionality of the exclusive remedy provision contained in the Workers' Compensation Act. 227 Minn. at 429–30, 35 N.W.2d at 732. An employee who had sustained an injury in the course of and arising out of her employment brought an action in district court against her employer, seeking compensation for her injury. But this court concluded that the employee was entitled to receive compensation under the Workers' Compensation Act, and consequently, the employee lost her right to sue at law for all injuries resulting from her employer's negligence. 227 Minn. at 434, 35 N.W.2d at 735.

The Workers' Compensation Act as originally enacted provided that any employee could elect not to be bound by the Act and, thereby, avoid the Act's exclusive remedy provision and preserve the right to sue at law. 227 Minn. at 430, 35 N.W.2d at 732. This version of the Act had previously been upheld against constitutional attack. *Id.* (citing *Matheson v. Minneapolis St. Ry. Co.,* 126 Minn. 286, 148 N.W. 71 (1914)). Since its original enactment, however, the Act had become compulsory, and employees no longer retained the option to elect not to be bound by it. 227 Minn. at 430, 35 N.W.2d at 732. Consequently, the employee in *Breimhorst* claimed that the basis for the Act's constitutionality no longer existed. *Id.*

This court disagreed. Although the court conceded that the Act was originally held not to impair constitutional rights because it applied only to parties who had voluntarily agreed and consented to be bound by its provisions, it did not follow that the Act in its amended compulsory form could not be valid on other grounds. *Id.* The court held that the adjudication procedure established by the

---

5. The broad rule announced in *Haymes* is contradicted by language relating to the preclusion of judicial review found in other cases of this court decided both before and after *Haymes. See, e.g., Dietz v. Dodge County,* 487 N.W.2d at 239 (implicitly recognizing that preclusion of judicial review might exist, stating "judicial review of the quasi-judicial decisions of administrative bodies, if available, must be invoked by writ of certiora-

ri"); *Minnesota Pub. Interest Res. Group v. Minnesota Envtl. Quality Council,* 306 Minn. 370, 376 n. 7 & 379, 237 N.W.2d 375, 379 n. 7 & 381 (1975) (implicitly recognizing that preclusion of judicial review might exist, and stating that "[i]n the absence of any language in the statute precluding judicial review, we hold that Minnesota courts have jurisdiction to hear appeals in these cases from decisions of the EQC").

Act did not violate separation of powers principles by encroaching upon the powers of the judicial branch. 227 Minn. at 432–33, 35 N.W.2d at 733–34. The legislature vested the workers' compensation commission with the power to determine whether an employee was eligible to receive workers' compensation. *Id.* The commission's eligibility determination affected both the employee's qualification for compensation under the Act and the employee's right to seek judicial relief for her injuries. If the commission concluded that the employee's injury was not covered by the Act, then the employee retained the right to seek judicial relief. 227 Minn. at 436, 35 N.W.2d at 735. If the commission concluded that the employee's injury was covered by the Act, then compensation under the Act became the employee's exclusive remedy. *Id.*

In either event, the commission's eligibility determinations lacked enforceable finality. 227 Minn. at 432, 35 N.W.2d at 733. The court emphasized that the commission's eligibility determinations were subject to judicial review by certiorari, and a determination by the commission lacked judicial finality because it was not enforceable by execution or other process absent a binding judgment entered thereon by a duly-established court. *Id.*

In making its eligibility determinations, the commission exercised quasi-judicial powers, including the power to determine facts and the power to apply the law to those facts. 227 Minn. at 432–33, 35 N.W.2d at 733–34. The commission's determinations lacked finality because the right to judicial review existed. Because the commission's determinations lacked finality, they did not constitute "judicial" decisions, and consequently, they did not encroach upon the powers of the judicial branch, which is the only branch that may constitutionally exercise judicial powers. *Id.* Thus, in *Breimhorst,* the right to judicial review was necessary to transform what would otherwise have been an unconstitutional exercise of judicial powers into a permissible exercise of quasi-judicial powers.

But the *Haymes* court cited *Breimhorst* as authority for the absolute rule that judicial review of an administrative agency's quasi-judicial decisions is constitutionally mandated. *Haymes,* 444 N.W.2d at 258. The decision in *Breimhorst* does not support an absolute rule that judicial review of an administrative agency's quasi-judicial decisions is constitutionally mandated. Instead, the decision in *Breimhorst* stands for the proposition that judicial review must exist if an administrative agency's quasi-judicial decision would be a "judicial" decision absent the existence of judicial review.

In *Wulff v. Tax Ct. of App.,* 288 N.W.2d 221 (Minn.1979), as in *Breimhorst,* the existence of judicial review transformed what would have otherwise been an unconstitutional exercise of "judicial" power into a constitutionally permissible exercise of "quasi-judicial" power. In *Wulff,* this court upheld the constitutionality of the administrative Tax Court. To support their challenge of the constitutionality of the Tax Court, the petitioners in *Wulff* noted that the Tax Court is called a "court," has judges, uses courtrooms, determines appeals, makes findings of fact, and issues written orders. 288 N.W.2d at 222. Moreover, unlike the decisions of the workers' compensation commission in *Breimhorst,* which require judicial enforcement, tax court decisions, upon filing, automatically become orders of the court. *Id.*

Notwithstanding this extensive grant of judicial powers, the *Wulff* court concluded that the Tax Court's existence and performance did not violate constitutional separation of powers principles. *Id.* at 225. Although the special context of taxation, which is essentially a legislative function, contributed to upholding the constitutionality of the tax court, this court also emphasized that "because there is always an ultimate check on administrative power in the form of review as of right in this court, we are satisfied that the Tax Court statute does not usurp judicial functions * * *." *Id.*

When considered with the *Breimhorst* and *Wulff* authority, *Haymes* properly directs that, ordinarily, judicial review must exist when an administrative agency exercises "quasi-judicial" powers because otherwise the agency's conduct would be "judicial" in nature and encroach upon the constitutional power sphere of the judicial branch, thereby

violating separation of powers principles. Judicial review transforms what would otherwise be an unconstitutional exercise of judicial power by an administrative body into a constitutionally permissible exercise of quasi-judicial power. Thus, the true constitutional rule should be: when an administrative agency's quasi-judicial function would constitute a judicial function absent the existence of judicial review, the right to judicial review must exist.[6]

This articulation of the true constitutional rule is not absolute and leaves open the possibility that judicial review of an administrative agency's quasi-judicial decision is not constitutionally mandated. Under limited circumstances, an administrative agency's decision might remain a constitutionally permissible exercise of quasi-judicial power, even absent the existence of judicial review. In those rare circumstances, the legislature may constitutionally preclude judicial review of an administrative agency's quasi-judicial decisions. Thus, in the context of the present case, the issue is not whether the HSCB exercises quasi-judicial powers and renders quasi-judicial decisions; rather, the issue is whether the HSCB's quasi-judicial decisions would constitute "judicial" decisions, in violation of the Minnesota Constitution, absent the existence of judicial review.

The decisions in *Breimhorst* and in *Wulff* emphasized that the actions taken by the administrative entities in those cases were not "judicial" because the decisions were not final. The actions taken were not final because judicial review existed. In the present case, the decisions of the HSCB are not final, not because judicial review exists, but rather because the HSCB is not the final arbiter of whether Meath is entitled to receive compen-

sation for her injuries. The HSCB is not the final arbiter of whether Meath is entitled to receive compensation because the HSCB mechanism of compensation is entirely voluntary. The HSCB compensation procedure provides an optional administrative alternative to civil litigation. A person need not request compensation from the HSCB before seeking judicial relief. Instead, a person voluntarily elects to proceed before the HSCB.

In that respect, the HSCB compensation procedure closely resembles the original Workers' Compensation Act before it became compulsory. That Act was held to be constitutional. Moreover, the HSCB compensation procedure is even more elective than the original Workers' Compensation Act because a claimant before the HSCB retains the option to reject any compensation awarded, and thereby preserves her right to seek judicial relief. In addition, the civil statute of limitations is tolled during the pendency of the claim before the HSCB, and if the claimant rejects the compensation award, the HSCB's findings and decision are not admissible in any successive court proceeding. Minn.Stat. § 115B.31, subds. 2 & 4 (1994). Thus, proceeding before the HSCB does not in any way affect the claimant's ability to seek a judicial remedy for her injuries.

The HSCB's decision to compensate becomes final only if the claimant elects to accept the award. Thus, "there is always an ultimate check on administrative power" in the form of the claimant's retained ability to seek a judicial remedy for her injuries. The lack of finality and the voluntary nature of the HSCB compensation procedure allows the HSCB's quasi-judicial decisions to retain their non-"judicial" character, even absent

---

6. This articulation of the true rule helps to explain the unexplained dichotomy created by the *Haymes* court when it stated that judicial review of judicial branch decisions is not required, while judicial review of an administrative agency's quasi-judicial decisions is constitutionally mandated. When a judicial court performs a judicial function, no additional judicial review is required because the judicial branch's adjudications are necessarily and appropriately judicial. But ordinarily, when an administrative agency performs what would otherwise constitute a judicial function, judicial review is constitutionally mandated because otherwise the administrative

agency would encroach upon the constitutional power sphere of the judicial branch.

Also, I believe that *Haymes* imprecisely cited *Appeal of O'Rourke*, 300 Minn. 158, 220 N.W.2d 811 (1974), for the proposition that "judicial review of a judicial branch decision is not constitutionally required." *Haymes*, 444 N.W.2d at 258. *Appeal of O'Rourke* properly stands for the proposition that this court is not obligated under the Minnesota Constitution to exercise its constitutional power to review all cases. *Appeal of O'Rourke*, 300 Minn. at 174–75, 220 N.W.2d at 821.

the existence of judicial review. Therefore, preclusion of judicial review of HSCB's compensation decisions does not unconstitutionally encroach upon the power sphere of the judicial branch.

TOMLJANOVICH, Justice (concurring specially).

I join in the special concurrence of Justice ANDERSON.